1
2
3
4                          UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6
7    OLGA SORACE, et al.,                          Case No.  21-cv-05714-EMC
8                        Plaintiffs,
9            v.                                    ORDER GRANTING PLAINTIFFS'
                                                   MOTION TO REMAND, AND
10   ORINDA CARE CENTER, LLC, et al.,              DENYING DEFENDANTS' MOTION
                                                   TO DISMISS
11                       Defendants.
                                                   Docket Nos. 8, 18
12
13
14          On May 13, 2021, Plaintiffs Olga Sorace, deceased, by and through her personal legal

15   representative and successor in interest, Essie Bracknell, and Essie Bracknell, individually,

16   ("Plaintiff/Plaintiffs") filed this action in Contra Costa County Superior Court.  Notice of Removal

17   (State Court Complaint) at 63, Docket No. 1.  On July 26, 2021, Defendants Orinda Care Center,

18   LLC, Renew Health Group, LLC, Larry Goldfarb, Crystal Solorzano, Does 1-25, inclusive,

19   Michael Sorace, Sonya Kolinsky, and John Bracknell ("Defendants") filed a Notice of Removal in

20   this Court.[1]  Docket No. 1.  On August 2, 2021, Defendants filed a Motion to Dismiss.  Defs.

21   MTD, Docket No. 8.  On August 16, 2021, Plaintiffs filed a Motion to Remand the matter.  Pls.

22   MTR, Docket No. 18.  On September 18, 2021, the Court temporarily vacated the hearing on

23   Defendants' Motion to Dismiss so as to hear the Motion to Remand first.  Clerk's Notice, Docket

24   No. 22.  Currently pending before the Court are Defendants' Motion to Dismiss and Plaintiffs'

25   Motion to Remand.  For the following the reasons, the Court **GRANTS** Plaintiffs' Motion to

26   Remand and **DENIES AS MOOT** Defendants' Motion to Dismiss.

27   ─────────────────────

28   [1] Michael Sorace, Sonya Kolinsky, and John Bracknell appear to be named in the Complaint as
     nominal defendants.  Plaintiffs do not assert any claims against the nominal defendants.

# I.     BACKGROUND

Plaintiff Essie Bracknell is the natural daughter of Olga Sorace.  Pls. MTR at 1.  Notably, Plaintiff filed a complaint in Contra Costa Superior Court alleging claims for:  (1) elder abuse and neglect in violation of California Welfare and Institutions Code §§ 15600, et. seq.; (2) violations of patient rights pursuant to California Health and Safety Code § 1430(b); (3) negligence; and (4) wrongful death.  Notice of Removal (State Court Complaint) at 1.  In her complaint, Plaintiff alleges that Olga Sorace (the "Decedent") was admitted to the Orinda Care Center, a skilled nursing facility, for long-term care in 2014.  Compl. ¶ 38.  Plaintiff notes that the Decedent had a "history of Alzheimer's dementia, unsteady gait, hearing problems, balance problems, impaired communication, weakness, impaired cognition, hypertension, and impaired physical mobility. Additionally, she was labeled a fall risk." *Id.* ¶ 39.  Plaintiff states that because of her physical and mental condition, the Decedent "was dependent on others for her activities of daily living including, but not limited to, personal hygiene, continence care, transferring in and out of bed, eating, drinking, and managing medication." *Id.*  Plaintiff specifically alleges that Defendants failed to properly assess and gather information to make decisions about suitable interventions "to avoid individualized health risks." *Id.* ¶ 40.  Additionally, Plaintiff claims that Defendants failed to assess the Decedent, "update her care plans regarding dehydration, provide her with assistance with feeding and drinking, and failed to monitor her signs and symptoms of dehydration and malnutrition." *Id.* ¶ 45.  Plaintiff further alleges that Defendants' employees began to fail to show up for work and as a result of understaffing, Defendants "failed to provide required care to the facilit[y's] residents and placed them in harm's way." *Id.* ¶ 49.  The complaint implies that because of Defendants' aforementioned neglect and failure to provide adequate care due to understaffing, the Decedent contracted COVID-19 and had to be transported to John Muir Medical Center. *Id.* ¶¶ 49-52.  Plaintiff claims that the neglect, elder abuse, and inadequate staffing ultimately resulted in the Decedent's death on April 18, 2020. *Id.* ¶ 53.

As for Plaintiff's first cause of action, she is seeking:  compensatory damages, special damages including past hospital, medical, professional, and incidental expenses, interest on compensatory damages, attorneys' fees, punitive damages, and treble damages.  Compl., Prayer

1    for Relief ¶ 1.  As for the second cause of action, Plaintiff is seeking statutory damages and

2    attorney's fees.  *Id.* ¶ 2.  As for the third and fourth causes of actions, Plaintiff requests

3    compensatory damages, special damages including funeral and burial expenses, medical and

4    incidental expenses according to proof, and for interest on any compensatory damages.  *Id*. ¶ 2.

5           As noted above, on July 26, 2021, Defendants removed this case to this Court, asserting

6    subject matter jurisdiction on three grounds:  (1) Plaintiff's claims are completely preempted by

7    the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247-6d and

8    247-6e; (2) the action raises a substantial and important federal issue, citing *Grable & Sons Metal*

9    *Products v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005); and (3) removal is proper

10   under the federal officer statute (28 U.S.C. § 1442(a)(1)) because Defendant was acting under the

11   direction of a federal officer when it engaged in the allegedly tortious conduct.  *See* Notice of

12   Removal, Docket No. 1.  Plaintiff challenges the removal of this action and moves to remand the

13   matter back to Contra Costa County Superior Court.  *See* Motion to Remand, Docket No. 18.

## II.        LEGAL STANDARD

14

15   A.    Removal

16          A defendant may remove an action to federal court only where there is either complete

17   diversity among the parties or federal question jurisdiction.  28 U.S.C. § 1441.  Federal question

18   jurisdiction exists over all civil actions arising under the Constitution, laws, or treaties of the

19   United States.  *Id.* § 1331.  Removal is proper if the case could have originally been filed in

20   federal court.  *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1004 (9th Cir. 2001).

21          The "well-pleaded complaint" rule requires a federal question to be present on the face of

22   the complaint at the time of removal for federal question jurisdiction to exist.  *Duncan v. Stuetzle*,

23   76 F.3d 1480, 1485 (9th Cir. 1996).  Causes of action "arise under" federal law in accordance with

24   28 U.S.C. § 1331 if federal law creates the cause of action or the complaint necessarily depends on

25   a substantial question of federal law.  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800,

26   808 (1988).  Federal jurisdiction cannot rest upon an actual or anticipated defense or counterclaim.

27   *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009).  "The burden of establishing federal subject

28   matter jurisdiction falls on the party invoking removal."  *Marin Gen. Hosp. v. Modesto & Empire*

United States District Court
Northern District of California

3

1  *Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009) (citing *Toumajian v. Frailey*, 135 F.3d 648, 652

2  (9th Cir. 1998)).  Notably, there is a "strong presumption against removal jurisdiction," and courts

3  must reject it "if there is any doubt as to the right of removal in the first instance."  *Geographic*

4  *Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010) (quoting

5  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (*per curiam*)) (internal quotation marks

6  omitted).

7  ### III.   DISCUSSION

8  Here, the complaint does not assert a federal claim for relief.  The claims are all based on

9  state law.  Defendants argue that this Court has subject matter jurisdiction on three independent

10  grounds:  (1) complete preemption under the PREP Act; (2) embedded question of federal law

11  under the *Grable* doctrine; and (3) federal officer removal.  Plaintiffs contend that none of these

12  grounds applies here.

13  At the outset, it is noteworthy that several courts in the Central and Southern Districts of

14  California have addressed these questions in the context of state law tort suits arising out of

15  COVID-19 deaths in care facilities.  *See, e.g., Martin v. Serrano Post Acute LLC*, No. 20-cv-5937,

16  2020 WL 5422949, at *1 (C.D. Cal. Sept. 10, 2020); *Jackie Saldana v. Glenhaven Healthcare*

17  *LLC*, No. 20-cv-5631, 2020 WL 6713995, at *1 (C.D. Cal. Oct. 14, 2020) (appeal filed Nov. 13,

18  2020); *Est. of McCalebb v. AG Lynwood, LLC*, No. 2:20-cv-09746, 2021 WL 911951, at *1 (C.D.

19  Cal. Mar. 1, 2021) (appeal filed Mar. 31, 2021); *Smith v. Colonial Care Ctr., Inc.*, No. 2:21-cv-

20  00494, 2021 WL 1087284, at *1 (C.D. Cal. Mar. 19, 2021) (appeal filed Apr. 19, 2021); *Stone v.*

21  *Long Beach Healthcare Ctr., LLC*, No. 21-cv-326, 2021 WL 1163572, at *1 (C.D. Cal. Mar. 26,

22  2021); *Winn v. California Post Acute LLC*, No. 21-cv-02854, 2021 WL 1292507, at *1 (C.D. Cal.

23  Apr. 6, 2021) (appeal filed May 7, 2021).  In each of these cases, the district court found that it

24  lacked subject matter jurisdiction and remanded the case to state court.  Defendants argue that

25  these courts too narrowly interpret the PREP Act and misconstrue Congress's and HHS's intent.

26  Opp'n at 19, Docket No. 23.

27  A.   Complete Preemption

28  The Supreme Court "has recognized . . . an 'independent corollary to the well-pleaded

4

*United States District Court*
*Northern District of California*

complaint rule known as the complete pre-emption doctrine.' " *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 947 (9th Cir. 2014) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425 (1987)).  The complete preemption "doctrine posits that there are some federal statutes that have such 'extraordinary pre-emptive power' that they 'convert[ ] an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' " *Retail Prop. Tr.*, 768 F.3d at 947 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).  "Complete preemption refers to the situation in which federal law not only preempts a state-law cause of action, but also substitutes an exclusive federal cause of action in its place."  *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018) (citations omitted).  "Thus, a state claim may be removed to federal court . . . when a federal statute wholly displaces the state-law cause of action through complete pre-emption."  *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003) (fns. omitted).

The Ninth Circuit has instructed that "complete preemption is 'rare' " and has recognized that "[o]ther circuits unanimously agree."  *Hansen*, 902 F.3d at 1057 (citing *Retail Prop. Tr.*, 768 F.3d at 947, *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Mont.*, 213 F.3d 1108, 1114 (9th Cir. 2000), *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1189 (8th Cir. 2015), *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 360 n.9 (6th Cir. 2015), *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013), and *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1261 n.16 (11th Cir. 2011)).  Notably, the Supreme Court has identified only three statutes that completely preempt state law claims:  (1) § 301 of the Labor Management Relations Act (the LMRA), 29 U.S.C. § 185; (2) § 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a); and (3) §§ 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85, 86.  *City of Oakland v. BP PLC*, 969 F.3d 895, 905-06 (9th Cir. 2020).

Moreover, in the Ninth Circuit, "complete preemption for purposes of federal jurisdiction under § 1331 exists when Congress:  (1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action."  *Id.* (citing *Hansen,* 902 F.3d at 1057).  As such, before complete preemption can apply to a plaintiff's state law claims, "the claims at issue must fall within the scope of the relevant federal statute."  *Jackson v. Big Blue Healthcare, Inc.*, 2020 WL

1    4815099, at *3-4 (D. Kan. Aug. 19, 2020) (*citing Beneficial Nat. Bank v. Anderson*, 539 U.S. at 9

2    n.5 ).

3        The party invoking federal jurisdiction bears the burden of demonstrating that the federal

4    statute applies and completely preempts at least one of the other party's state law claims.  *See*

5    *Reiten v. CIGNA Health & Life Ins. Co.*, No. 20-cv-2330, 2020 WL 1862462, at *3 (C.D. Cal.

6    Apr. 14, 2020) ("As the party seeking to invoke federal jurisdiction, [the defendant] bears the

7    burden of proving that [the] plaintiff's claim is completely preempted."); *see also Smallwood v.*

8    *Allied Van Lines, Inc.*, 660 F.3d 1115, 1120 (9th Cir. 2011) ("[T]he district court had subject

9    matter jurisdiction if at least one of [the plaintiff's] claims was completely preempted by the

10   [federal statute].").

11       1.    The PREP Act

12       Here, Defendants assert that the PREP Act provides for complete preemption.  The Court

13   thus first describes the Act.  If the Secretary (the "Secretary") of the Department of Health and

14   Human Services ("HHS") "determin[es] that a disease or other health condition or other threat to

15   health constitutes a public health emergency," the PREP Act gives the Secretary the authority to

16   "make a declaration, through publication in the Federal Register, recommending, under conditions

17   as the Secretary may specify, the manufacture, testing, development, distribution, administration,

18   or use of one or more covered countermeasures …"  42 U.S.C. § 247d-6d(b)(1).  Notably, the

19   Secretary issued such a declaration with respect to the ongoing COVID-19 pandemic.  *See*

20   Declaration Under the Public Readiness and Emergency Preparedness Act for Medical

21   Countermeasures Against COVID-19, 85 Fed. Reg. 15198, 15198 (Mar. 17, 2020) (the

22   "Declaration").  The PREP Act provides immunity from liability with respect to the administration

23   or use of a recommended covered countermeasure.

24       To date, the Secretary has issued nine amendments to the Declaration.  *See* First Amended

25   Decl., 85 Fed. Reg. 21012 (Apr. 15, 2020); Second Amended Decl., 85 Fed. Reg. 35100 (June 8,

26   2020); Third Amended Decl., 85 Fed. Reg. 52136 (Aug. 24, 2020); Fourth Amended Decl., 85

27   Fed. Reg. 79190 (Dec. 9, 2020); Fifth Amended Decl., 86 Fed. Reg. 7872 (Feb. 2, 2021); Sixth

28   Amended Decl., 86 Fed. Reg. 9516 (Feb. 16, 2021); Seventh Amended Decl., 86 Fed. Reg.

United States District Court
Northern District of California

6

1446202 (Mar. 11, 2021); Eighth Amended Decl., 86 Fed. Reg. 41977 (Aug. 4, 2021); and Ninth

Amended Decl., 86 Fed. Reg. 51160 (Sept. 14, 2021).[2]

The PREP Act defines a "covered countermeasure" as (1) a "qualified pandemic or

epidemic product," (2) a "security countermeasure," (3) a drug, biological product, or device that

is authorized for emergency use, or (4) a "respiratory protective device that is approved by the

National Institute for Occupational Safety and Health . . ., and that the Secretary determines to be

a priority for use during a public health emergency[.]"  42 U.S.C. § 247d-6d(i)(1).  The

Declaration explains that a covered countermeasure includes "any antiviral, any other drug, any

biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or

mitigate COVID-19," or "any device used in the administration of any such product, and all

components and constituent materials of any such product."  Declaration at 15202.

Particularly relevant to Defendants' position is the Fourth Amendment to the Declaration

in which the Secretary defined the "administration" of a covered countermeasure as follows:

> Administration of the Covered Countermeasure means physical
> provision of the countermeasures to recipients, or activities and
> decisions directly relating to public and private delivery, distribution
> and dispensing of the countermeasures to recipients, management
> and operation of countermeasure programs, or management and
> operation of locations for the purpose of distributing and dispensing
> countermeasures.
>
> Where there are limited Covered Countermeasures, not
> administering a Covered Countermeasure to one individual in order
> to administer it to another individual can constitute "relating to . . .
> the administration to . . . an individual" under 42 U.S.C. 247d-6d.
> For example, consider a situation where there is only one dose . . . of
> a COVID-19 vaccine, and a person in a vulnerable population and a
> person in a less vulnerable population both request it from a
> healthcare professional.  In that situation, the healthcare professional
> administers the one dose to the person who is more vulnerable to
> COVID-19.  In that circumstance, the failure to administer the
> COVID-19 vaccine to the person in a less-vulnerable population
> "relat[es] to . . . the administration to" the person in a vulnerable
> population.  The person in the vulnerable population was able to
> receive the vaccine only because it was not administered to the
> person in the less-vulnerable population.  Prioritization or
> purposeful allocation of a Covered Countermeasure, particularly if
> done in accordance with a public health authority's directive, can

United States District Court
Northern District of California

---

[2] Public Readiness and Emergency Preparedness Act, *COVID-19 PREP ACT Declarations*, https://www.phe.gov/Preparedness/legal/prepact/Pages/default.aspx (last visited Oct 26, 2021).

fall within the PREP Act and this Declaration's liability protections.

85 Fed. Reg. at 79197.

Notably, the PREP Act's immunity provision provides that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure[.]"  42 U.S.C. § 247d-6d(a)(1).  The PREP Act's immunity provision provides as follows:

> The immunity under paragraph (1) applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure.

42 U.S.C. § 247d-6d(a)(2)(B).  If the PREP Act applies, the only remedies available to an injured person are:  (i) compensation for covered injuries from an administrative "Covered Countermeasures Process Fund" administered by the Secretary, or (ii) an action filed in the U.S. District Court for the District of Columbia if there is "death or serious physical injury proximately caused by willful misconduct."  42 U.S.C. §§ 247d-6d(d)(1), 247d-6e.  It does not provide generally for a federal claim that can be brought in district court.

2.    Applicability of the PREP Act

Before addressing the more global question of complete preemption, the Court notes that it spears that Plaintiffs' claims do not even fall within the scope of the PREP Act.  Plaintiffs allege that Decedent's death was the result of Defendants' inaction with regard to her individualized care plan (hydration, nutrition, etc.) and inadequate staffing.  Compl. ¶¶ 39-53.  Defendants argue that the PREP Act applies to Plaintiff's claims because the Secretary's Fourth Amendment makes clear that the failure to use a covered countermeasure can fall within the PREP Act's protections and that the failure to properly implement an effective infection control program by its very nature implicates the use of covered countermeasures such as, personal protective equipment and COVID-19 testing.  Opp'n at 10.

United States District Court
Northern District of California

1    Although, the HHS Secretary's Fourth Amendment makes clear that an "inaction claim" is

2  not necessarily beyond the scope of the PREP Act, such claims appear to only fall under the scope

3  of the PREP Act where:  (1) there are limited covered countermeasures; and (2) there was a failure

4  to administer a covered countermeasure to one individual because it was administered to another

5  individual.  85 Fed. Reg. at 79197 (illustrating a causal relationship between (1) administering and

6  (2) not administering a covered countermeasure where person-A "was able to receive the [single

7  covered countermeasure] only because it was not administered to" person B).  Therefore, pursuant

8  to the HHS Secretary's Fourth Amendment, "there appears to only be immunity for 'inaction

9  claims' when the failure to administer a covered countermeasure to one individual has 'a close

10  causal relationship' to the administration of that covered countermeasure to another individual."

11  *Stone*, 2021 WL 1163572, at *4 (citing *Anson v. HCP Prairie Village KS Opco LLC*, 2021 WL

12  308156 (D. Kan. Jan. 29, 2021)).  For example, "[p]rioritization or purposeful allocation of a

13  Covered Countermeasure, particularly if done in accordance with a public authority's directive,

14  can fall within the PREP Act and th[e] Declaration's liability protections."  85 Fed. Reg. at 79197.

15  However, "other 'inaction claims' may not."  *Stone*, 2021 WL 1163572, at *4.

16    Plaintiffs do not allege that the Decedent's cause of death was causally connected to the

17  administration or use of any covered countermeasure in their complaint.  Rather, Plaintiffs allege

18  that Decedent's death was the result of Defendants' inaction, not with respect to rationing a

19  covered countermeasure, but with regard to the Decedent's general individualized care plan

20  (hydration, nutrition, etc.) and inadequate staffing.  Compl. ¶¶ 39-53.  Plaintiff's complaint does

21  not explicitly allege that Defendants failed to create a proper infection control mechanism to avoid

22  the transmission of the COVID-19 virus or that Defendants failed to properly train staff with

23  regard to the COVID-19 virus and utilize personal protective equipment.  Several district courts

24  have concluded this kind of inaction – where the plaintiff explicitly faults a nursing home

25  defendant for failing to create and maintain a proper infection control program during the

26  pandemic – do not fall within the scope of the PREP Act.  *See, e.g.*, *Estate of McCalebb*, 2021 WL

27  911951, at *1, 5 (concluding that the action does not appear to be about a purposeful allocation of

28  scarce resources where the plaintiff alleged that, *inter alia*, the defendant failed to follow,

9

1   implement, and adhere to all CDC guidelines on how to protect and treat the decedent in light of

2   the risk of COVID-19, and where "the gravamen of the Complaint is that Defendant was generally

3   neglectful in operating the Facility"); *Robertson v. Big Blue Healthcare, Inc.*, 2021 WL 764566, at

4   *2, 7-9 (D. Kan. Feb. 26, 2021) (concluding that inaction claims premised on a failure to take

5   preventative measures to stop the spread of COVID-19, including allegations that the defendants

6   failed to "follow proper infection control protocols" and "provide personal protective equipment

7   ('PPE') to staff" do not fall within the scope of the PREP Act).

8         The Court agrees.  None of the Defendants' conduct alleged by Plaintiffs qualifies as

9   administration or use of a covered countermeasure within the meaning of the PREP Act.  There is

10  no causal connection between the injury and the use or administration of a covered

11  countermeasure.  That the claims herein – typical of claims arising from alleged inadequate care in

12  facilities for the elderly – do not, on their face, fall within the purview of the PREP Act

13  underscores the thin thread upon which the claim of complete preemption rests.

14        3.    <u>Lack of Complete Preemption</u>

15        The PREP Act does not provide a basis for complete preemption, because it does not

16  satisfy the Ninth Circuit's two pronged complete preemption test.  First, the PREP Act does not

17  completely replace state law claims related to COVID-19.  As the above discussion demonstrates,

18  common claims of inadequate health care, even where resulting COVID-19 infections, do not fall

19  within the purview of the PREP Act.  More specifically, numerous courts have held that the PREP

20  Act does not prevent a plaintiff from bringing state law claims based on an alleged failure to use

21  covered countermeasures.  *See, e.g.*, *Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 2020

22  WL 4671091, at *1, *9 (D. N.J. Aug. 12, 2020) (holding that the failure to "observe a wide range

23  of appropriate safety precautions" "would not be preempted by the PREP Act, which is designed

24  to protect those who employ countermeasures, not those who decline to employ them"); *Jackson*,

25  2020 WL 4815099, at *8 (holding the PREP Act does not apply to "the non-administration or non-

26  use of covered countermeasures" and concluding that the PREP Act did not apply to the plaintiff's

27  claims because "[d]efendants fail[ed] to point to any claim in the complaint where Plaintiff alleges

28  that the administration or use of any of these things [covered countermeasures] caused the

United States District Court
Northern District of California

decedent's death"). As the court in *Stone* emphasized, "[t]hese cases plainly hold that the PREP

Act does not 'wholly displace' state law claims that implicate healthcare entities and COVID-19."

*Stone*, 2021 WL 1163572, at *5 (citing *Parker v. St. Jude Operating Co., LLC*, 2020 WL

8362407, at *5 (D. Or. Dec. 28, 2020); *Beneficial Nat'l Bank*, 539 U.S. at 8).

Nor is the second prong of the Ninth Circuit's complete preemption test satisfied; the

PREP Act does not provide a substitute cause of action for Plaintiff's claims based on Defendants'

alleged negligence. *See Estate of McCaleb*, 2021 WL 911951. "Instead, when applicable, the

PREP Act provides immunity to defendants on state law negligence claims." *Parker*, 2020 WL

8362407, at *5. As the district court in *Estate of McCaleb*, recently explained:

> Other than for willful misconduct, Congress provided no federal
> remedy that could be pursued through a federal cause of action.
> Instead, Congress established an emergency fund to provide
> adequate compensation to eligible individuals for covered injuries
> directly caused by the administration or use of a covered
> countermeasure. The HHS Secretary is responsible for establishing
> procedures to administer this compensation program. The
> Secretary's determination of eligibility and compensation under the
> program is final and not subject to judicial review.
>
> In this case, Plaintiffs have brought negligence claims. If their
> negligence claims were preempted, then Plaintiffs would have to
> look to the Secretary's compensation program for relief. Under
> Ninth Circuit law, such administrative relief is not the type of
> displacement remedy that triggers complete preemption. For
> purposes of complete preemption, the displacement remedy must
> supply a federal cause of action. An administrative remedy will not
> suffice because the complete-preemption doctrine rests on the theory
> that any state claim within its reach is transformed into federal
> claims. This transformation is the source of original federal
> jurisdiction by supplying a federal cause of action.
>
> The PREP Act does not create original federal jurisdiction over a
> covered claim for negligence or recklessness. On the contrary,
> Congress precluded it by vesting exclusive jurisdiction in the HHS
> Secretary. In this circumstance, allowing removal to federal court on
> complete-preemption grounds is internally inconsistent:  the district
> court must have jurisdiction for removal to be proper, but the court
> must then dismiss the removed case because only the administrative
> agency, not federal courts, have primary jurisdiction. Thus, the
> PREP Act does not completely preempt such covered claims.

2021 WL 911951, at * 4 (internal quotations, citations, footnotes, and alterations omitted). Thus,

the PREP Act does not appear to satisfy the Ninth Circuit's two-pronged complete preemption

test.

11

United States District Court
Northern District of California

1       More fundamentally, unlike the rare three instances in which Congress has found that the

2  need for uniformity of federal law is so compelling as to require complete preemption of the field

3  to the total exclusion of state law (*see City of Oakland*, 969 F.3d at 905-06), there is no indication

4  of such Congressional intent here.  The purpose of the PREP Act is specific – to grant the

5  Secretary of HHS the authority to devise specific countermeasures in the face of a public health

6  crisis and encourage implementation of those countermeasures by providing immunity for

7  providers who implement those countermeasures.

8       It is therefore not surprising that nearly all courts addressing this issue have consistently

9  held that the PREP Act does not satisfy these requirements for complete preemption.  *See, e.g.*,

10  *Robin Roebuck v. Mayo Clinic*, No. 21-cv-00510, 2021 WL 1851414, at *5 (D. Ariz. May 10,

11  2021) ("[T]he Court joins the growing consensus finding that the PREP Act is not a complete

12  preemption statute.  The PREP Act does not satisfy the Ninth Circuit's complete preemption test

13  because it does not completely replace state law claims related to COVID-19 and does not provide

14  a substitute cause of action for [Plaintiff's] medical negligence claim."); *Golbad v. GHC of

15  Canoga Park*, No. 2:21-cv-01967, 2021 WL 1753624, at *2 (C.D. Cal. May 4, 2021) ("[S]imply

16  put, the PREP Act does not satisfy the Ninth Circuit's two-part complete preemption test.");

17  *Padilla v. Brookfield Healthcare Ctr.*, No. 21-cv-2062, 2021 WL 1549689, at *4 (C.D. Cal. Apr.

18  19, 2021) ("Nearly every other federal court addressing the issue of complete preemption has

19  found that the PREP Act is not a statute with complete preemptive effect."); *see also Bolton v.

20  Gallatin Ctr. for Rehab. & Healing, LLC*, No. 3:20-cv-00683, 2021 WL 1561306, at *7 (M.D.

21  Tenn. Apr. 21, 2021) ("[N]early every district court to consider whether the PREP Act completely

22  preempts similar state-law claims against nursing homes has concluded the PREP Act is not a

23  complete preemption statute, or at least does not have such an effect on claims like those presented

24  here.") (internal quotation marks and citation omitted).

25       To be sure, in the Fourth Amendment to the Declaration, the HHS Secretary:  (1) opined

26  that "[t]here are substantial federal legal and policy issues, and substantial federal legal and policy

27  interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545

28  U.S. 308 (2005), in having a uniform interpretation of the PREP Act;" and (2) clarified that the

United States District Court
Northern District of California

1   Declaration "must be construed in accordance with the Department of Health and Human Services

2   (HHS) Office of the General Counsel (OGC) Advisory Opinions on the Public Readiness and

3   Emergency Preparedness Act and the Declaration (Advisory Opinions)" and expressly

4   incorporated the Advisory Opinions for that purpose.  85 Fed. Reg. at 79191, 79197.  On January

5   8, 2021, OGC issued an Advisory Opinion, which opined that the PREP Act "is a 'complete

6   preemption' statute" because it establishes "a federal cause of action, administrative or judicial, as

7   the only viable claim."  HHS OGC Advisory Opinion 21-01 at 2.[3]  The January 8, 2021 Advisory

8   Opinion also opined that "the Fourth Amendment to the Secretary's Declaration supports the

9   *Grable* doctrine."  *Id*. at 4.  The Advisory Opinion, however, cautions that "[i]t is not a final

10  agency action or a final order.  It does not have the force or effect of law."  *Id*. at 5.

11          However, the Court is not persuaded this Opinion changes the analysis.  "[T]he Office of

12  the General Counsel interpretation is not entitled to *Chevron* deference."  *Dupervil v. Alliance*

13  *Health Operations,* 516 F. Supp. 3d 238, 252 (E.D. N.Y. Feb. 2, 2021).  It is not a duly

14  promulgated regulation interpreting the statute.  *See United States v. Mead Corp.*, 533 U.S. 218,

15  226-27, (2001) (deciding that no *Chevron* deference is due where an agency's rule or opinion was

16  not "promulgated in the exercise of" any delegated congressional authority).  Instead, it is entitled

17  only to the limited difference afforded by *Skidmore v. Swift & Co*., 323 U.S. 134, 140 (1944).  *See*

18  *id.* (In applying the Fair Labor Standards Act, the Supreme Court explained that "[w]e consider

19  that the rulings, interpretations and opinions of the Administrator under this Act, while not

20  controlling upon the courts by reason of their authority, do constitute a body of experience and

21  informed judgement to which courts and litigants may properly resort for guidance.  [However,]

22  [t]he weight of such a judgment in a particular case will depend upon the thoroughness evident in

23  its consideration, the validity of its reasoning, its consistency with earlier and later

24  pronouncements, and all those factors which give it power to persuade, if lacking power to

25  control.").  The Advisory Opinion is not persuasive.  Both the Supreme Court and the Ninth

27  ───────────────

28  [3] The Department of Health & Human Services, *Advisor Opinion 21-01 On the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision* (Jan. 8, 2021), https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/2101081078-jo-advisory-opinion-prep-act-complete-preemption-01-08-2021-final-hhs-web.pdf.

United States District Court
Northern District of California

1    Circuit have held that a federal statute is completely preemptive only where it provides an

2    exclusive federal cause of action; yet, the Advisory opinion fails to cite any case law for its

3    proposition that an exclusive federal *administrative* remedy is sufficient to implicate complete

4    preemption.  The Advisory Opinion "lacks the 'power to persuade.'"  *Dupervil,* 516 F. Supp. 3d at

5    252 (quoting *Skidmore*, 323 U.S. at 140); *see also Evon Smith v. Colonial Care Center, Inc.*, 2021

6    WL 1087284, at *6 (C.D. Cal. Mar. 19, 2021) (finding that the defendants' argument that the

7    plaintiff's claims were completely preempted because of the Advisory Opinion was contrary to

8    law and as such, "the OGC's January 8, 2021 Advisory Opinion lacks the power to persuade");

9    *Estate of McCalebb*, 2021 WL 911951, at *3 ("Neither the Secretary nor the OGC provides any

10   significant analysis of *Grable*'s narrow holding and its two-pronged test.  Deference to the

11   Secretary's jurisdictional assertion is not due, and adherence to his conclusory assertion is not

12   warranted.").

13       Defendants also rely on *Garcia*, 522 F. Supp. 3d 734 and *Rachal*, 2021 U.S. Dist. LEXIS

14   105847 in asserting complete preemption.  Opp'n at 11.  Neither are persuasive.  In denying the

15   Plaintiff's motion for remand, the district court in *Garcia* heavily relied on the OGC's Advisory

16   Opinion to find that the PREP act was a complete preemption statute.  *See Garcia*, 522 F. Supp.

17   3d 745 ("because the OGC stated that the PREP Act is a complete preemption statute, the Court

18   finds that an adequate basis for federal question jurisdiction exists" and did not decide whether

19   "federal question jurisdiction exists because of either the *Grable* [d]octrine or because the claims

20   fall squarely within the PREP Act.").  For the reasons stated above, this Court disagrees.  *See*

21   *Golbad*, 2021 WL 1753624, at *3 (noting that "[t]he court in *Garcia* deferred to the HHS

22   Secretary's opinion of PREP Act complete preemption, but failed to consider the Ninth Circuit's

23   two-part complete preemption test.").  In *Rachal,* the district court found that the defendants, a

24   nursing and rehabilitative center, were "clearly 'covered persons,' " under the PREP Act, but that

25   it was "not clear from the face of the petition that the entirety of the claims at issue relate to [the]

26   [d]efendants' administration or use of covered countermeasures."  *Rachal*, 2021 U.S. Dist. LEXIS

27   105847, at *9.  On that basis, the *Rachal* court denied the defendants' motion to dismiss and

28   ordered the parties to engage in a 90-day discovery period, during which the parties were directed

1  to conduct discovery as to the nature of the plaintiff's claims, including the defendant's specific

2  acts of alleged misconduct and whether those acts were "covered countermeasures" under the

3  PREP Act. *Id.* at *14. Notably, the district court in *Rachal* did not address whether the PREP Act

4  is a complete preemption statute.

5       The Court concludes complete preemption does not apply.

6  B.    Imbedded Federal Question Under the *Grable* Doctrine

7       Under the *Grable* doctrine, in order for a state law claim to provide federal question

8  jurisdiction, the "state law claim [must] necessarily raise a stated federal issue, actually disputed

9  and substantial, which a federal forum may entertain without disturbing any congressionally

10  approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products,*

11  *Inc.*, 545 U.S. at 314. Further, the Supreme Court has stated "federal jurisdiction over a state law

12  claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and

13  (4) capable of resolution in federal court without disrupting the federal-state balance approved by

14  Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). "[I]t is not enough that the federal issue

15  be significant to the particular parties in the immediate suit; that will *always* be true when the state

16  claim 'necessarily raise[s]' a disputed federal issue, as *Grable* separately requires. The

17  substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal

18  system as a whole." *Gunn*, 568 U.S. at 260 (italics in original).

19       District courts have consistently rejected healthcare providers' or assisted living facilities'

20  arguments that claims arising out of patients or residents getting COVID-19 raise embedded

21  federal issues with respect to the PREP Act. *See, e.g., Stone*, 2021 WL 1163572, at *7 ("The

22  federal issue relates to Defendant's *defense*, not the claims alleged by Plaintiff. As such, the

23  federal issue is not necessarily raised."); *Lyons v. Cucumber Holdings, LLC*, 520 F. Supp. 3d

24  1277, 1288 ("the federal issue raised relates to Defendants' defense" so the court concluded that it

25  did not have subject matter jurisdiction based on embedded federal question grounds); *Estate of*

26  *McCalebb*, 2021 WL 911951, at *3 ("Defendant has not demonstrated that federal jurisdiction lies

27  under *Grable*" and "Plaintiff' state claims do not require an interpretation, or challenge the

28  constitutional validity, of a federal statute.")

United States District Court
Northern District of California

15

United States District Court
Northern District of California

1    The Court agrees with these decisions.  The *Grable* doctrine relies on the claims made by

2  the plaintiff, not the defenses raised by the defendant.  Plaintiffs have raised standard medical

3  negligence and elder abuse claims arising under California law and those claims do not *necessarily*

4  *raise* a federal issue.  Defendants appear to be the only parties that raise a federal issue, for

5  example in asserting their immunity defense under the PREP Act.  Opp'n at 20-23.  This is not

6  enough to implicate *Grable*.  "No federal issue is 'necessarily raised' by Plaintiffs' complaint

7  because an interpretation of the PREP Act is not an essential element of any of Plaintiffs' state law

8  claims."  *Hopman v. Sunrise Villa Culver City*, No. 2:21-cv-01054, 2021 WL 1529964, at *6

9  (C.D. Cal. Apr. 16, 2021); *see also Padilla*, 2021 WL 1549689 (finding no subject matter

10  jurisdiction under *Grable* based on PREP Act defense).  Moreover, as noted above, issues raised

11  by Plaintiffs that have no causal connection with any PREP Act countermeasures; nothing requires

12  interpretation of the PREP Act.  In any event, "a case may not be removed to federal court on the

13  basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated

14  in the plaintiff's complaint, and even if both parties concede that the federal defense is the only

15  question truly at issue."  *Caterpillar Inc.*, 482 U.S. at 393.

16    Accordingly, it appears that this Court does not have subject matter jurisdiction based on

17  an embedded federal question under *Grable*.  *See, e.g.*, *Robertson*, 2021 WL 764566, at * (D. Kan.

18  Feb. 26, 2020) ("To be certain, Defendants intend to assert the PREP Act as a *defense* to

19  Plaintiff's claim.  But that is not enough."); *Dupervil*, 516 F. Supp. 3d at 258 ("But this only

20  shows that Defendants may have an affirmative defense to Plaintiff's claims, not that Plaintiff's

21  claims are affirmatively premised on, or on their face necessarily require resolution of, the PREP

22  Act.").

23  C.    Federal Officer Removal

24    Federal officer removal is available under 28 U.S.C. § 1442(a) if "(a) [the removing party]

25  is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions,

26  taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a

27  'colorable federal defense.' "  *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018).

28  This is an exception to the well-pleaded complaint rule, which typically requires a federal question

16

to be pleaded in the complaint in order for the district court to have subject matter jurisdiction based on a federal question.  *See N.G. v. Downey Reg'l Med. Ctr.*, 140 F. Supp. 3d 1036, 1039 (C.D. Cal 2015).

Here, there does not appear to be a dispute as to whether the removing parties (Defendants) are "persons" for purposes of the federal officer removal statute.  The next inquiry is whether Defendants acted "pursuant to a federal officer's directions," whether there is a "causal nexus" between Defendants' actions and Plaintiffs' claims, and whether Defendants can assert a colorable federal defense.  Notably, Defendants point to government regulations and public directives regarding the response to the COVID-19 pandemic.  The court in *Fidelitad* stated that, "[f]or a private entity to be acting under a federal officer, the private entity must be involved in an effort to assist, or to help carry out, the duties or tasks of the federal superior."  *Fidelitad, Inc.*, 904 F.3d at 1095.  However, a "private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'  And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored."  *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153 (2007).

Defendants argue that the government regulations and public directives implemented during the COVID-19 pandemic are tantamount to directions from a federal officer.  *See* Notice of Removal ¶¶ 51-61.  For instance, Defendants argue that at "all relevant times [Defendant] Orinda [Care Center]—as part of the nation's critical infrastructure—was acting at the specific direction of federal authorities to address the on-going federal effort and national state of emergency to contain the COVID-19 pandemic and prevent the spread of the virus.  *Id*. ¶ 62.  Here, Defendants fail to establish that their alleged conduct at issue in this case was "pursuant to a federal officer's directions."  *See Stirling v. Minasian*, 955 F.3d 795, 800 (9th Cir. 2020).  Defendants point to only general regulations and directives regarding the provision of medical services, and argue that, as a skilled nursing facility, they are subject to a high degree of federal regulation.  Reply at 27-31.  As noted above, there appears to be no causal relationship between the claims in this suit and the implementation of Covered Countermeasures by Defendants.

Unsurprisingly, similar arguments have been consistently rejected by district courts considering similar claims against assisted living facilities based on their actions during the COVID-19 pandemic.  *See, e.g.*, *Nava v. Parkwest Rehab. Ctr. LLC*, No. 2:20-cv-07571, 2021 WL 1253577, at *2 (C.D. Cal. Apr. 5, 2021) (holding that "general regulations and directives" and being "subject to a high degree of federal regulation" is not enough for federal officer removal); *Saldana*, 2020 WL 6713995, at *3 (rejecting the defendants' argument that "in taking steps to prevent the spread of COVID-19, [they] did so in compliance with CDC and CMS directives, which were aimed at helping achieve the federal government's efforts at stopping or limiting the spread of COVID-19" as insufficient for federal officer removal because "[t]he directions Defendants point to are general regulations and public directives regarding the provision of medical services."); *Martin*, 2020 WL 5422949 (finding that the COVID-19 directives that the defendant relied on were nothing more than "general regulations and public directives regarding the provision of medical services") (quoting *Watson, Inc.*, 551 U.S. at 153).

Accordingly, the Court finds that Defendants have not established that removal is proper based on the federal officer removal statute and **GRANTS** Plaintiffs' Motion to Remand.

## IV.        DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

On August 2, 2021, Defendants filed a Request for Judicial Notice in support of the Notice of Removal, specifically requesting that the Court take judicial notice of:  Ex. 1- Plaintiff's Complaint for Damages filed on May 13, 2021; Ex. 2 - United States, Department of Health and Human Services ("HHS") "Notice of Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID–19." 85 Fed. Reg. 52,15198 (Mar. 17, 2020); Ex. 3 - HHS "Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID–19." 85 Fed. Reg. 73,21012 (Apr. 15, 2020); Ex. 4 - HHS "Second Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID–19." 85 Fed. Reg. 110,35100 (June 8, 2020); Ex. 5 – HHS "Fourth Amendment to the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19." 85 Fed. Reg. 237,79190 (Dec. 9, 2020); Ex. 6 – HHS August 14, 2020, correspondence from Robert

United States District Court
Northern District of California

18

1    Charrow, General Counsel for the Office of the Secretary of HHS, to Thomas Barker of Foley

2    Hoag, LLP; Ex. 7 - HHS Advisory Opinion 20-04 issued October 22, 2020 as amended October

3    23, 2020, by General Counsel Robert Charrow; Ex. 8 – HHS Advisory Opinion on the Public

4    Readiness and Emergency Preparedness Act and The March 10, 2020 Declaration Under the Act,

5    April 17, 2020, as modified on May 19, 2020, by General Counsel Robert Charrow; Ex. 9 - HHS

6    Advisory Opinion 21-01, PREP Act Scope of Preemption Provision, issued January 8, 2021, by

7    General Counsel Robert Charrow; Ex. 10 - United States, Food and Drug Administration ("FDA")

8    List of Covered Countermeasures subject to Emergency Use Authorizations by the United States

9    FDA; Ex. 11 – United States, Centers for Disease Control and Prevention ("CDC") CDC Health

10   Advisory dated Jan. 8, 2020, "Outbreak of Pneumonia of Unknown Etiology (PUE) in Wuhan,

11   China"; Ex. 12 - CDC Update and Interim Guidance dated January 17, 2020, "Outbreak of 2019

12   Novel Coronavirus (2019-nCoV) in Wuhan, China" with guidance to state and local health

13   departments and healthcare providers; Ex. 13 - CDC Interim Infection Prevention and Control

14   Recommendations for Patients with Known or Patients Under Investigation for 2019 Novel

15   Coronavirus (2019-nCoV) in a Healthcare Setting, dated January 24, 2020; Ex. 14 - CDC Health

16   Update and Interim Guidance on Outbreak of 2019 Novel Coronavirus (2019-nCoV), dated Feb.

17   1, 2020; Ex. 15 – State of California, Health and Human Services Agency, CA Department of

18   Public Health ("CDPH"). All Facilities Letters (AFLs) disseminating information and directives

19   issued by the CDC with respect to identification of Patients Under Investigation and infection

20   prevention and control; AFLs 20-09, 20-10, 20-11, 20-13, and 20-15; Ex. 16 – United States,

21   Centers for Medicare and Medicaid Services ("CMS"). Memorandum QSO 20-09-ALL dated Feb.

22   6, 2020, instructing healthcare providers to adhere to CDC directives regarding the use of

23   standard, contact, and airborne precautions when interacting with Persons Under Investigation; Ex.

24   17 - CDC Update and Interim Guidance on the Outbreak of 2019 Novel Coronavirus (COVID-19),

25   dated Feb. 28, 2020; Ex. 18 - CDC "Strategies to Prevent the Spread of COVID-19 in Long-Term

26   Care Facilities (LTCF)", dated Mar. 1, 2020; Ex. 19 - CDPH All Facilities Letter AFL 20-17,

27   dated Mar. 3, 2020; Ex. 20 - United States, Centers for Medicare and Medicaid Services ("CMS")

28   CMS Memorandum QSO 20-14-NH to State Survey Agency Directors regarding "Guidance for

United States District Court
Northern District of California

1   Infection Control and Prevention of Coronavirus Disease 2019 (COVID-19) in Nursing Homes,"

2   dated Mar. 4, 2020; Ex. 21 - CDC "Updated Guidance on Evaluating and Testing Persons for

3   Coronavirus Disease 2019 (COVID-19)", dated Mar. 8, 2020; Ex. 22 - CDC "Interim Infection

4   Prevention and Control Recommendations for Patients with Suspected or Confirmed Coronavirus

5   Disease 2019 (COVID-19) in Healthcare Settings", dated Mar. 10, 2020; Ex. 23 - CMS

6   Memorandum QSO 20-17-ALL regarding "Guidance for Use of Certain Industrial Respirators by

7   Health Care Personnel", dated Mar. 10, 2020; Ex. 24 - CDPH All Facilities Letter AFL 20-22.1

8   regarding "Guidance for Limiting the Transmission of COVID-19 in Long-Term Care Facilities",

9   dated Mar. 11, 2020; Ex. 25 - CMS Memorandum QSO-20-14-NH regarding "Guidance for

10  Infection Control and Prevention of Coronavirus Disease 2019 (COVID-19) in Nursing Homes

11  (REVISED)", dated March 13, 2020; Ex. 26 - CDC documents containing strategies for

12  optimizing limited supplies of eye protection, isolation gowns, N95 respirators, and face masks,

13  dated Mar. 17, 2020; Ex. 27 -CMS Memorandum QSO 20-20-ALL regarding "Prioritization of

14  Survey Activities", dated Mar. 20, 2020; Ex. 28 - CDC publication entitled "Preparing for COVID

15  19: Long-term Care Facilities, Nursing Homes", dated Mar. 21, 2020; Ex. 29 - CDC "COVID-19

16  Long-Term Care Facility Guidance", dated Apr. 2, 2020; Ex. 30 - HHS "Fifth Amendment to

17  Declaration Under the Public Readiness and Emergency Preparedness Act for Medical

18  Countermeasures Against COVID–19", effective Jan. 28, 2021; Ex. 31 - Statement of Interest of

19  United States submitted in *Bolton v. Gallatin Center for Rehabilitation & Healing, LLC*, No. 3:20-

20  cv-00683 (M.D. Tenn.), dated Jan. 21, 2021; Ex. 32 – United States District Court, Central District

21  of California. Civil Minutes dated Feb. 10, 2021. [IN CHAMBERS] Order Regarding Plaintiff's

22  Motions for Remand and Defendant's Motion to Dismiss Complaint in *Garcia v. Welltower OpCo

23  Group LLC*, No. 8:20- CV-02250, at *8-9 (C.D. Cal. Feb. 10, 2021); Ex. 33 - HHS "Sixth

24  Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act for

25  Medical Countermeasures Against COVID-19, effective Feb. 20, 2021; Ex. 34 – HHS "Seventh

26  Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act for

27  Medical Countermeasures Against COVID-19, effective Mar. 11, 2021.  Defs. RJN, Docket No. 9.

28        Notably, Defendants failed to attach these documents as exhibits to their request for

judicial notice.  *See* Defs. RJN, Docket No. 9.  However, the Court can properly take judicial notice of these document because this information was made publicly available by government entities and neither party disputes the authenticity.  *See* Fed. R. Evid. 201; *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities . . . , and neither party disputes the authenticity . . . or the accuracy of the information displayed therein.").  Accordingly, this Court **GRANTS** Defendants' request for judicial notice.

## V.     CONCLUSION

In light of the foregoing, the Court finds that Defendants have failed to carry their burden to show removal was proper.  The Court therefore **GRANTS** Plaintiffs' Motion to Remand the matter to the Contra Costa County Superior Court and **DENIES** Defendants' Motion to Dismiss as moot.  Additionally, in granting the motion for removal, the Court makes clear that it makes no decision as to whether Plaintiffs' claims are barred by the PREP Act under principles of ordinary defensive preemption, or otherwise.  That issue is for the state court to decide.  *See Dupervil*, 516 F. Supp. 3d at 257.

This order disposes of Docket Nos. 8 and 18.


**IT IS SO ORDERED**.


Dated: November 9, 2021

EDWARD M. CHEN
United States District Judge